# IN THE UNTIED STATES COURT FOR
# THE NORTHERN DISTRICT OF WEST VIRGINIA

**DESSIE R. ARMSTRONG,**
    Plaintiff,

v.                                                                   Civil Action No. 1:09-cv-00131

**MGC MORTGAGE, INC. AND**
**WILSHIRE CREDIT CORPORATION,**
    Defendants.

## ORDER/OPINION

On June 2, 2010, Defendant MGC Mortgage, Inc. "MGC" filed a Motion to Compel the Deposition of Plaintiff Dessie R. Armstrong [Docket Entry 93]. On June 21, 2010, Plaintiff, Dessie R. Armstrong ("Armstrong") filed her Response to the Motion to Compel and Motion for Protective Order [Docket Entry 96]. By Order dated June 24, 2010 this Court granted Defendant's motion to compel the deposition of Dessie Armstrong. [DE 97]. Armstrong moved for reconsideration of the Court's order. [DE 108]. Defendant responded thereto on July 22, 2010. [DE 118]. Armstrong replied on August 2, 2010. [DE 124]. Defendant filed a response on August 6, 2010. [DE 125]. The Court held a telephonic hearing on August 6, 2010 during which no evidence was taken but arguments were made relative to the limited medical records and opinion filed under seal. Although Armstrong has moved to amend her complaint to substitute her daughter as Plaintiff, that motion is pending unresolved. At this time, the motion for reconsideration stands unresolved, the time for dispositive motions under the Court's scheduling order is fast approaching, and a review of the docket of the case reveals the case lies fallow pending a final decision on the motion for reconsideration which in reality is the original motion to compel filed almost 4 months ago. This matter is still referred to the undersigned United States Magistrate Judge by Order dated April 1, 2010 [Docket Entry 72].

It is not disputed that Dessie Armstrong and her husband, Robert Eugene Armstrong, signed a deed of trust in 1986 with the Westover Bank financing the purchase of the home located at 31 Daffodil Road, Morgantown, WV. The amount of the 1986 loan secured by the deed of trust was $44,900.00. October 27, 2000 the Armstrongs signed a new note with Aames Funding Corporation, DBA Aames Home Loans refinancing their home for $108,000.00. January 2007 Robert Eugene Armstrong died leaving Dessie Armstrong as the sole surviving obligee on the note. It is the $108,000.00 note that Wilshire Credit Corporation began servicing in October 2007 that MGC took over servicing in June 2008 giving rise to the pending litigation. Allegedly, Armstrong did not make any payments to MGC on the $108,000.00 note which triggered foreclosure, a sheriff's sale and complaint for unlawful detainer.

Nothing provided by Armstrong to date is dispositive of the motion to reconsider. Armstrong presented under seal Exhibit A in which an apparent nurse, Denise Palmer, amongst a host of diagnoses related to her cardiovascular system, opined on or about June 23, 2010 : "We would advise that the patient not be placed in any stressful situation that would cause her to have an increase stress on her heart. This would include any deposition or being placed on a witness stand for a court hearing." Through the dated medical record and opinion without much more, Armstrong, the person who undisputedly entered into the mortgage that is the subject of the pending litigation and who is the sole plaintiff in the pending litigation, seeks to have this Court preclude the Defendant from deposing her relative to the claims she has made.

The following cases, while not dispositive or binding on this court, provide insight to the procedure that may be used:

1) In re McCorhill Pub., Inc., 91 B..R. 223 (SDNY 1988).

A prohibition against the taking of an oral deposition is a very unusual procedure and

a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order. *See* **8 Wright & Miller, Federal Practice and Procedure, § 2037 (1986 Sup.)**; **CBS, Inc. v. Ahern, 102 F.R.D. 820 (S.D.N.Y.1984)**. Manifestly, if an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order. **Walsh v. Pullman Co., 10 F.R.D. 77 (S.D.N.Y.1948)**. A letter submitted by a psychiatrist which briefly stated that the party to be deposed showed progressive deterioration in her mental state and that she was anxious and disorganized, was sufficient to sustain the party's initial burden for a brief stay of the deposition so as to allow time for the psychiatrist to be brought to court to testify with regard to the protective order that was sought. **Medlin v. Andrew, 113 F.R.D. 650 (M.D.N.C.1987)**. In the instant case, Dr. Athos testified that the proposed oral deposition of Mr. Kraus could be injurious to Mr. Kraus' health. Not only is Mr. Kraus not able to process facts because of his dementia, but his heart may not withstand the agitation caused by the examination and cross-examination contemplated by the oral deposition. The debtor cross-examined Dr. Athos and could have also introduce contradictory evidence, if any. There was no evidence to rebut Dr. Athos' unequivocal testimony that an oral deposition of Mr. Kraus, even if taken at his home, could have deleterious consequences to his health and that he was physically incapable of furnishing any information.

2) In re Will of Martin, 784 N.Y.S.2d 921 (NY Sur. 2004).

Tied to the mode of the deposition is the question of the sufficiency of the medical evidence supporting the motion for a protective order. In a number of decisions granting a protective order for health reasons the medical evidence is "uncontradicted" ( **Button v. Guererri, 298 A.D.2d 947, 748 N.Y.S.2d 102; Verini v. Bochetto, 49 A.D.2d 752, 372 N.Y.S.2d 690; In re McCorhill Publishing, Inc., 91 B.R. 223** [S.D. New York] ). However, here the objectants have had no opportunity to challenge the conclusions drawn by Dr. McMullen that the Alastair's deposition would be "life threatening." Moreover, at this point the court cannot ascertain whether this conclusion is truly so without further inquiry and the court may not abdicate its responsibility by unquestioningly accepting a doctor's summary opinion. The opposing party has a right for itself and on behalf of the court to examine the matter in more detail ( *see,* **Medlin v. Andrew, 113 F.R.D. 650).** Both *Button v. Guererri, supra,* and *Verini v. Bochetto, supra,* recognize, by necessary implication, the right of the party seeking the deposition to obtain medical evidence to controvert or contradict the medical evidence offered by the party or witness seeking the protective order.

Accordingly, the objectants are authorized to select a physician of their own choosing to consult with Dr. McMullen and review his medical records and examine Alastair if deemed necessary. At the court conference held on the return day of this motion, Alastair's attorney requested that if further inquiry should be made into his client's medical condition, another physician consult with Alastair's physician and review the medical records. Moreover, since Alastair himself has placed his medical condition in issue, those records should be produced forthwith ( **Hoenig v. Westphal, 52**

**N.Y.2d 605, 439 N.Y.S.2d 831, 422 N.E.2d 491).**

The court emphasizes that the two physicians and the attorneys involved should make every effort to come to some agreement on how the deposition is to be conducted including the time, place, persons present, allowance for rest periods for the witness, appointment of a referee to monitor the deposition, and any other accommodations short of insisting that the deposition be merely on written questions.

While written questions may be an alternative if it is eventually established that a deposition would be "life threatening," there are several reasons why oral depositions should not be routinely replaced by written questions. First, the interrogatories format does not permit the probing follow-up questions necessary in all but the simplest litigation. Second, without an oral deposition, counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of a trial. And finally, written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes ( **Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547;** *see also,* **Perry v. Edwards, 16 F.R.D. 131;** 1 Lane Goldstein, Trial Techniques, § 622 [3d ed]; Haydock and Herr on Discovery § 16.04 [4th ed] ).

If there is no satisfactory agreement arrived at as to the mode of the deposition, the objectants will be given an opportunity to examine Dr. McMullen and eventually a hearing may be required. The motion for a protective order will be held in abeyance pending further order of the court.

3) Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 128 (D. Md. 2009)

"[i]n seeking to prevent or delay a deposition by reason of medical grounds, the moving party has the burden of making a *specific and documented factual showing* that the deposition would be dangerous to the deponent's health." **Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C.1987)**(emphasis added). In **Medlin,** the court opined that the court has a responsibility to undertake a detailed examination of whether a deposition would truly place a person's health at risk. **Id.** The "brief and conclusory" doctor's note submitted*128 in **Medlin** was insufficient to compel a protective order. **Id.** See also **Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C.1988)**(explaining that a protective order granted for health reasons must be supported by "detailed information" and may even require the examination of the deponent's physician). As discussed, Mr. Foster has failed to offer any compelling information describing how and why a deposition threatens his health, beyond claiming that he has health problems that "flare up from time to time," and his "stamina has declined over the years." (Paper No. 92-3, 2.) Neither has he submitted an opinion from a medical professional.

The undersigned has previously determined that the deposition of Dessie Armstrong should be taken. Nothing presented by Armstrong carries her heavy burden of proving that her physical

health has deteriorated her mental status such that she should be protected against the rigors of a deposition. Nothing presented by Armstrong carries her heavy burden of proving that her physical health is such that her life would be endangered by her being required to give a deposition on oral examination under conditions that could be established by the Court pursuant to the provisions of FRCivP 26(c). At best Armstrong's purported nurse suggests she [we] would "advise that the patient not be placed in any stressful situation that would cause her to have an increase stress on her heart. This would include any deposition or being placed on a witness stand for a court hearing." The statement/advice/opinion attributed to the nurse does not say a deposition will cause stress or that it would result in harm to Armstrong if she were required to undergo a deposition. Nor does it address under what conditions such a deposition might take place and not add stress.

However, the undersigned is unwilling to compel Armstrong to be deposed without giving both parties due process opportunity to be heard.

Accordingly, Armstrong, having placed her medical condition in issue, shall forthwith, but not later than October 8, 2010, provide Defendant with a complete copy of her medical record related to her heart and related conditions for use by a physician selected by Defendant; Armstrong's physician and Defendant's physician shall consult with each other to discuss Armstrong's ability to undergo a deposition and the conditions that should be crafted by court order for the taking of such a deposition such consultation to take place not later than October 15, 2010 with each party suffering the costs of their own physician; in the event the physicians are unable to agree on a procedure for the taking of Armstrong's deposition, then counsel are to forthwith so notify the Court; in the event the physicians are able to agree on a procedure for the taking of Armstrong's deposition, counsel are to forthwith so notify the Court so the Court can enter an appropriate order scheduling the deposition in accord with the agreed upon conditions. In the event the physicians are unable to agree on a

procedure for the taking of Armstrong's deposition, the Court will then schedule an additional hearing on Defendant's motion to compel and will at that hearing decide whether the deposition should be precluded or whether Defendant should, at its expense, be permitted to have an IME of Armstrong and whether further hearings are thereafter required.

The Clerk is directed to provide copies of this order to all counsel of record.

It is so **ORDERED.**

Dated: September 28, 2010

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE